**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Milton Iturrios Romero,<br><br>          Plaintiff,<br><br>v.<br><br>Synergy Restoration LLC, et al.,<br><br>          Defendants. | No. CV-24-01602-PHX-MTL<br><br>**ORDER** |

      Plaintiff Milton Iturrios Romero moves for default judgment against Defendants Synergy Restoration, LLC ("Synergy"), Bradley Schultz, and Sarah Schultz (collectively, the "Defendants"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 14.) For the following reasons, the Court will grant the motion for default judgment.

**I.    BACKGROUND**

      As the Clerk of Court has entered default (Doc. 13), the Court takes the complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

      The complaint alleges claims of failure to pay overtime and minimum wages in violation of the Fair Labor Standards Act ("FLSA"), failure to pay minimum wages in violation of the Arizona Minimum Wage Act ("AZMWA"), and failure to pay wages due and owing in violation of the Arizona Wage Act ("AZWA"). (Doc. 1 ¶¶ 63-85.)

      In October 2023, Romero began working for Synergy, "a restoration company"

owned and operated by Mr. and Mrs. Schultz. (*Id.* ¶¶ 15, 30.) Until December 2023, Romero worked as a non-exempt manual laborer engaged in laying floor.[1] (*Id.* ¶ 31; Doc. 14-1 at 5.) During this time, Romero worked "between 50 and 60 hours or more per week" for compensation "on a piece rate basis, regardless of the number of hours he worked in a given week." (Doc. 1 ¶¶ 42, 33.) But Defendants did not pay Romero for his final two work weeks or his overtime hours.[2] (*Id.* ¶¶ 43, 52.)

As a result, Romero filed a lawsuit asserting two violations of the FLSA, one violation of the AZMWA, and one violation of the AZWA. (*Id.* ¶¶ 63-85.) Romero alleges he was an employee who Defendants misclassified as an independent contractor. (*Id.* ¶ 36.) He seeks monetary damages for his final two work weeks, federal and state liquidated damages, as well as attorneys' fees and costs. (Doc. 14 at 6-7, 9-11.) In total, excluding attorneys' fees and costs and post-judgment interest, Romero requests $12,603.90 against Synergy, with $7,274.40 of that amount to be held jointly and severally against all Defendants. (*Id.* at 12.) Romero also requests that damages be augmented by post-judgment interest pursuant to 28 U.S.C. § 1961. (*Id.*) Finally, Romero asks that the Court allow him to file a motion for attorneys' fees and costs following the award of default judgment. (*Id.*)

Roughly two months after Romero filed the complaint, Mr. Schultz called Romero's attorney and left a voicemail stating, "[o]bviously we need to do something here." (Doc. 14-2 at 2.) In response, Romero's attorney called and texted Mr. Schultz on multiple occasions "but never received return correspondence." (Doc. 14 at 8.) Despite being served with the summons and complaint (Docs. 9, 10, 11), Defendants failed to file an answer, respond to the complaint, or file a notice of appearance. Romero's application for default was entered by the Clerk on August 12, 2024, and he now moves for default judgment

---

[1] In the complaint, Romero alleges he worked "approximately nine months," from October 2023 until December 2023. (Doc. 1 ¶¶ 31, 40(h), 41.) However, in Romero's motion for default judgment, he alleges he worked from October 2023 until December 2024, or "about 13 work weeks." (Doc. 14 at 5.) The Court will use the December 2023 date from the complaint. *See Geddes*, 559 F.2d at 560 (taking the factual allegations in the **complaint** as true) (emphasis added).

[2] Section 7 of the FLSA provides for overtime compensation of employees, including those paid on a piece rate basis. *See Navarro v. Bean Drywall Inc.*, No. CV-06-2096-PHX-GMS, 2009 WL 10707832, at *3 (D. Ariz. Oct. 16, 2009) (citing *Hodgson v. Cactus Craft of Ariz.*, 481 F.2d 464, 467 (9th Cir. 1973)).

against Defendants. (Docs. 13, 14.)

## II. DISCUSSION

### A. Jurisdiction, Venue, and Service

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Romero asserts claims arising under the FLSA, the AZMWA, and the AZWA. (Doc. 1 ¶ 1.) Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over claims arising out of federal law, including claims under the FLSA. 29 U.S.C. § 201, *et seq*. Romero's state law claims under the AZMWA and the AZWA, form "part of the same case or controversy under Article III of the United States Constitution." (Doc. 1 ¶ 9.) 28 U.S.C. § 1367. Thus, the Court has supplemental jurisdiction over Romero's state law claims.

Further, Romero alleges that venue and personal jurisdiction requirements are satisfied because all Defendants "regularly conduct business in and have engaged in the wrongful conduct alleged herein . . . in [] this judicial district." (*Id.* ¶ 10.) Since "a substantial part of the events or omissions giving rise to the claim" occurred in this district, venue is proper. 28 U.S.C. § 1391(b)(2). Additionally, the Court has personal jurisdiction over the parties because Synergy is licensed to conduct business in Arizona and "has officers, and/or maintains agents for the transaction of its customary business in Maricopa County." (*Id.* ¶ 12.) Similarly, Romero is a resident of the state of Arizona. (*Id.* ¶ 11.)

Service is properly executed by delivering a copy of the summons and the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A); Ariz. R. Civ. P. 4.1(d)(1). Here, Mrs. Schultz was personally served on July 18, 2024. (Doc. 11.) On the same occasion, she accepted service on behalf of her husband at their place of residence. (Doc. 10.)

Service on a corporation can be executed by serving a copy of the summons and the complaint on a statutory agent. Fed. R. Civ. P. 4(h)(1)(B); Ariz. R. Civ. P. 4.1(i). Mr. Schultz is Synergy's registered statutory agent, and he provided authorization for

service upon it to be left with his wife. (Doc. 9.) Because he is the statutory agent and one of Synergy's owners, the corporation received sufficient notice of the complaint. *See Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994) ("Rule 4 is a flexible rule that should be liberally construed to uphold service so long as a party receives sufficient notice of the complaint."). Therefore, all Defendants were properly served.

### B.   Default Judgment

Once a default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.2d 922, 923 (9th Cir. 2009) (noting the two-step process of default judgment: "Entering a Default" and "Entering a Default Judgment").

The following factors are to be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, Romero "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct. 18, 2021). Romero also bears the burden of proving all damages. *Szabo v. Sw. Endocrinology Assocs. PLLC*, No. CV-20-01896-PHX-DWL, 2021 WL 3411084, at *2 (D. Ariz. July 27, 2021); *see also Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### 1.   The first, fifth, sixth, and seventh *Eitel* factors

Defendants have yet to respond or participate in this litigation. Traditionally, this means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman*

*Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (noting that the first, fifth, and sixth *Eitel* factors supported granting default judgment because a denial would prejudice the plaintiff, there was no dispute over material facts, and the default was not due to excusable neglect).

The first factor weighs in favor of default judgment because denying Romero's motion for default judgment will leave him "without other recourse for recovery" due to Defendants' failure to appear in the suit. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor also weighs in favor of default judgment because "all well-pleaded facts in the complaint are taken as true . . . no genuine dispute of material facts would preclude granting" the motion for default judgment. *Id.* Additionally, the sixth factor tips in favor of entering default judgment because Defendants were properly served. (Docs. 9, 10, 11.) *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (finding that a defendant's failure to answer is likely not a result of excusable neglect if the defendant is served properly).

Finally, although the seventh factor—which considers the policy favoring a decision on the merits—generally weighs against default judgment, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (quotation omitted). Therefore, this factor is not sufficient to preclude the entry of default judgment in this case.

### 2. The second and third *Eitel* factors

The second and third *Eitel* factors, the merits of the claim and the sufficiency of the complaint, are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (quotation omitted). However, before turning to whether Romero stated a claim on which he may recover, the Court must analyze the status of Romero as an employee within the meaning of the FLSA, the AZMWA, and the AZWA.

### i.     FLSA claims

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The Ninth Circuit has traditionally employed a six factor "economic reality" test to distinguish between employees and independent contractors. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). No one factor in the test is dispositive. *Id.* Instead, the determination depends "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

The economic reality test is comprised of these factors:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Real*, 603 F.2d at 754.

The first factor examines the employer's degree of control. Romero alleges that Defendants exercised control over the manner in which Romero performed work as a manual laborer. (Doc. 1 at 4-5.) In support, Romero states, "Defendant[s] . . . had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with [Romero's] employment." (*Id.* ¶¶ 14, 15, 37.) Romero further alleges that "Defendants individually and/or through an enterprise or agent, directed and exercised control over [his] work and wages at all relevant times." (Doc. 1 ¶¶ 25, 59.) It appears Romero merely copied and pasted this language from *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Nevertheless, these cursory allegations, taken as true, are sufficient to determine that Defendants exercised control over Romero's work. *See id.* (finding that given the

"circumstances of the whole activity" the alleged employee exercised control over the rate and method of payment, and the structure and conditions of employment).

The second factor contemplates the alleged employee's opportunity for profit and loss. Likewise, this factor weighs in Romero's favor because he did not bear any of the business's financial risk and he "was economically dependent on Defendants." (Doc. 1 ¶ 39.) Further, he "had no opportunity for profit or loss in the business" (*id.* ¶ 40(f)) because there was "a lack of opportunity for loss of capital investment." *See Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371 (9th Cir. 1981).

The third factor weighs the relative investments of the alleged employer and employee in the business. Courts consider the worker's level of investment in "equipment or materials required for his task," *Donovan*, 656 F.2d at 1370, and "the worker's individual investment [in comparison] to the employer's investment in the overall operation." *Dryhaug v. Tax Breaks, Inc.*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *9 (D. Ariz. Sept. 15, 2015). This factor also weighs in Romero's favor because he did not make capital investments in Synergy or in the materials required for his task, and he "used equipment owned by Defendants." (*Id.* ¶ 38.) As a result, he did not "suppl[y] the necessary risk capital to run the [business]." *Donovan*, 656 F.2d at 1372.

The fourth factor considers the degree of skill necessary to perform the alleged employee's work. "A minimal level of skill weighs in favor of finding that an individual was an employee, rather than an independent contractor." *Dryhaug*, 2015 WL 13567067, at *9. This factor weighs in favor of Romero, whose duties consisted entirely of manual labor. (Doc. 1 ¶ 31.) *See Real*, 603 F.2d at 755 (finding no special skill was required when services "consist[ed] primarily of physical labor").

The fifth factor contemplates the permanence of the working relationship between the alleged employer and employee. Romero alleges that he spent less than a year working for Defendants. (*See* Doc. 1 ¶¶ 31, 41.) Outside this bare assertion, the complaint lacks sufficient allegations for the Court to determine the permanence of the working relationship. As a result, this factor weighs neutrally.

The sixth and final factor considers whether the alleged employee rendered services that were an integral part of the alleged employer's business. Romero asserts "[t]he service rendered by [him] in his work for Defendants were integral to Defendants' business." (*Id.* ¶ 40(g).) Apart from this allegation, Romero provides no more information. However, the Court assumes that Defendants were dependent upon manual laborers to lay flooring, as Synergy is a restoration company. Therefore, these six factors weigh in favor of finding Romero is an employee of Defendants under the FLSA.

## ii. AZMWA claims

The AZMWA, like the FLSA, defines an "employee" as "any person who is or was employed by an employer." A.R.S. § 23-362(A). To determine whether a worker is an employee as opposed to an independent contractor, AZMWA places the "burden of proof . . . upon the party for whom the work is performed to show independent contractor status by clear and convincing evidence." A.R.S. § 23-362(D). Defendants do not meet this burden because they have not appeared. Additionally, because the AZMWA shares the same definition of employee as the FLSA, the Court's reasoning as to Romero's employment status under the FLSA applies with equal force here.

The AZMWA defines an "employer" as "any corporation proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, [and] individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee." A.R.S. § 23-362(B). Defendants are employers because they operate in Arizona and controlled Romero's work and wages at all relevant times. (Doc. 1 ¶¶ 12, 14, 16.)

## iii. AZWA claims

Like the FLSA and the AZMWA, the AZWA defines an "employee" as "any person who performs services for an employer under a contract of employment either made in this state or to be performed wholly or partly within this state." A.R.S. § 23-350(2). Because Romero alleges that he was an employee, he sufficiently states an AZWA claim. (Doc. 1 ¶ 11.) *See Tejeda v. Boston Mkt. Corp.*, No. CV-23-01497-PHX-JJT, 2023 WL

8810927, at *2 (D. Ariz. Dec. 20, 2023) ("Plaintiff alleges that since May 2023, Defendants failed to pay him while he worked . . . [a]ccepting this allegation as true, Plaintiff has shown that Defendants violated the . . . A[Z]WA.") Romero also alleges that while working for Defendants, he resided in Maricopa County, Arizona. (*Id.* ¶ 11.)

The AZWA defines "employer" as "any individual, partnership, association, joint stock company, trust or corporation, the administrator or executor of the estate of a deceased individual or the receiver, trustee or successor of any of such persons employing any person." A.R.S. § 23-350(3). Romero alleges that Mr. and Mrs. Schultz own Synergy, a business with offices that "maintains agents for the transaction of its customary business in Maricopa County, Arizona." (Doc. 1 ¶ 12.) Accordingly, Defendants are employers under the AZWA.

### iv. Summary of the FLSA, AZMWA, and AZWA Claims

For the foregoing reasons, the Court finds that Romero is an employee under the FLSA, the AZMWA, and the AZWA. 29 U.S.C. § 203(e)(1); A.R.S. § 23-362(A); A.R.S. § 23-350(2). In his complaint, Romero argues that he is entitled to statutorily guaranteed unpaid and overtime wages, as well as unpaid minimum wages. (*Id.* ¶¶ 60-62.) Because the Court takes these allegations as true, *NewGen*, 840. F.3d at 617, Romero "has stated a claim on which [he] may recover." *Vietnam Reform Party*, 416 F. Supp. 3d at 962. The Court finds the second and third *Eitel* factors favor the entry of default judgment.

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Streeter*, 438 F. Supp. 2d at 1071. Allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Geddes*, 559 F.2d at 560. But the district court has "wide latitude" in determining the amount of damages to award upon default judgment. *HTS, Inc. v. Boley*, 945 F. Supp. 2d 927, 947 (D. Ariz. 2013) (citing *James v. Frame*, 6 F.3d 307,

310 (5th Cir. 1993)).

Here, Romero seeks the unpaid minimum and overtime wages he is owed under the FLSA, the AZMWA, and the AZWA along with liquidated damages. Romero requests $12,603.90 plus post-judgment interest pursuant to 28 U.S.C. § 1961, and attorneys' fees and costs. (Doc. 14 at 12.) Given the claims listed in the complaint, the Court finds the amount requested is reasonable. As such, the fourth *Eitel* factor favors the entry of default judgment.

### 4. Summary of *Eitel* Factors

After reviewing Romero's complaint and motion, and analyzing the *Eitel* factors, the Court finds that factors one through six weigh in favor of granting Romero's motion. While the final factor weighs against entering default judgment, it is insufficient to outweigh the other factors. Therefore, the Court concludes that Romero is entitled to default judgment.

## C. Damages

Having found that entry of default judgment is proper, the only remaining issue is one of damages. In contrast to the other allegations in a complaint, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *Geddes*, 559 F.2d at 560. Nonetheless, a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James*, 6 F.3d at 310.

Romero requests entry of judgment against Synergy, for a total amount of $12,603.90. (Doc. 14 at 12.) This amount consists of unpaid wages totaling $3,300—trebled to $9,900 under A.R.S. § 23-355—and the unpaid federal overtime wages of $1,351.95—doubled to $2,703.90 under 29 U.S.C. § 216(b). (*Id.* at 10.) Of the $12,603.90, Romero requests that $7,274.40 be held against Synergy, Mr. Schultz, and Mrs. Schultz jointly and severally. (*Id.* at 12.) The joint and several damages consist of the unpaid Arizona minimum wage of $1,523.50 that must be trebled under A.R.S. § 23-364(G) for a total of $4,570.50,[3] and the amount of the doubled unpaid federal overtime damages of

---

[3] Since Romero would receive more under Arizona's minimum wage, $4,570.70, than he would under the federal minimum wage, $1,595.00, the Court uses the Arizona minimum

$2,703.90. (*Id.* 9-10.) Romero asks that the remaining $5,329.50 of the total amount be held only against Synergy. (*Id.* at 11.) Romero also requests the total amount be enhanced by post-judgment interest under 29 U.S.C. § 1961. (*Id.* at 12.) Finally, Romero requests the Court allow him to file a separate motion for attorneys' fees and costs. (*Id.*)

Rule 54(c) of the Federal Rules of Civil Procedure requires that a default judgment "not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Romero listed the requested damages in the complaint (Doc. 1 ¶¶ 60-62), and he does not request damages "different in kind" or in excess of those requested in the complaint. (Doc. 14 at 9-12.) Romero also provided sufficient notice of the potential award through his complaint, enabling Defendants "to decide whether to respond to the complaint in the first instance." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at *3 (D. Ariz. Jan. 22, 2018).

The Court may enter a default judgment without a damages hearing when, as here, "the amount claimed is a liquidated sum or capable of mathematical calculation." *HTS, Inc.*, 954 F. Supp. 2d at 947 (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). In this case, the requested damages are capable of mathematical calculation because they are comprised of hours worked by Romero, the amount in pay he was entitled to receive, and statutory multipliers. (*Id.* at 6-7, 9-11.) The requested damages are also supported by Romero's motion and his declaration. (Docs. 14, 14-1.) *See Doe v. United States*, No. CV-17-01991-PHX-GMS (JZB), 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) ("In determining damages, a court can rely on declarations submitted by the plaintiff[.]") (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal 2003)).

The Court finds that Romero's motion and declaration establish the damages he suffered. (Docs. 14, 14-1.) Therefore, the Court will enter default judgment against

---

wage calculation. (Doc. 14 at 6.) *See e.g.*, *Wong v. White Rock Phlebotomy, LLC*, No. CV-23-00234-TUC-EJM, 2024 WL 897002, at *8 (D. Ariz. Feb. 13, 2024) ("Because the Arizona minimum wage is higher than federal law provides, and the A[Z]MWA provides for treble damages, the Court finds Plaintiff entitled to damages . . . in the amount of [the trebled AZMWA damages].").

1  Defendants in the amount of $12,603.90 with $7,274.40 to be held jointly and severally
2  against all Defendants, and the remaining $5,329.50 to be held against Synergy.
3  Additionally, post-judgment interest will be added to this award. Should Romero seek
4  attorneys' fees and costs, he may file an application with the Court.

**III.  CONCLUSION**

Accordingly,

**IT IS ORDERED** granting Plaintiff Milton Iturrios Romero's Motion for Default Judgment (Doc. 14).

**IT IS FURTHER ORDERED** awarding Plaintiff Milton Iturrios Romero $12,603.90 plus post-judgment interest at the applicable statutory rate against Defendants Synergy Restoration, LLC, Bradley Schultz, and Sarah Schultz, with $7,274.40 of that amount to be held jointly and severally against all defendants and the remaining $5,329.50 to be held against Defendant Synergy Restoration, LLC.

**IT IS FURTHER ORDERED** that Plaintiff Milton Iturrios Romero shall have fourteen (14) days from the date of this Order to file a motion for attorneys' fees and costs that complies in all respects with LRCiv 54.2.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 6th day of January, 2025.

_Michael T. Liburdi_
Michael T. Liburdi
United States District Judge